**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| ELAINE WANG, | : |
| | : |
| Plaintiff, | : Civil Action No. _____ |
| | : |
| v. | : |
| | : **COMPLAINT FOR VIOLATIONS OF** |
| IBERIABANK CORPORATION, WILLIAM | : **SECTIONS 14(a) AND 20(a) OF THE** |
| H. FENSTERMAKER, E. STEWART SHEA | : **SECURITIES EXCHANGE ACT OF** |
| III, HARRY V. BARTON, JR., ERNEST P. | : **1934** |
| BREAUX, JR., DARYL G. BYRD, JOHN N. | : |
| CASBON, J. MICHAEL KEMP, SR., JOHN E. | : **JURY TRIAL DEMANDED** |
| KOERNER III, RICK E. MAPLES, and ROSA | : |
| SUGRANES, | : |
| | : |
| Defendants. | : |

---

Elaine Wang ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Iberiabank Corporation ("Iberiabank or the "Company"), and the members Iberiabank's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed merger between Iberiabank and First Horizon National Corporation ("First Horizon").

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Registration Statement on Form S-4 (the

"Registration Statement") to be filed on December 31, 2019 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Registration Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Iberiabank will merge with and into First Horizon, resulting with First Horizon surviving the merger (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each Iberiabank common share issued and outstanding will be converted into the right to receive 4.584 shares of First Horizon common stock for each Iberiabank share of common stock (the "Merger Consideration"). First Horizon and Iberiabank shareholders will hold approximately 56% and 44% of the combined company's outstanding shares, respectively.

3.      As discussed below, Defendants have asked Iberiabank's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Registration Statement contains materially incomplete and misleading information concerning the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.  The financial projections were also utilized by the financial advisor of First Horizon, Morgan Stanley & Co. LLC ("Morgan Stanley") and the financial advisors of the Company, Keefe, Bruyette & Woods, Inc. ("KBW") and Goldman Sachs & Co. LLC ("Goldman Sachs") in conducting the valuation analyses in support of the fairness opinion. The Registration Statement also omitted material information with respect with its analyses performed to reach the fairness opinions from each financial advisor.

4. It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Iberiabank's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1390, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id*. at 1316 (emphasis added).

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Defendants are found or are inhabitants or

3

transact business in this District. Iberiabank maintains operations in New York, New York, and the Comapny hired its financial advisors, KBW and Goldman Sachs, which are headquartered in this District. The Company also hired the New York City-headquartered law firm Simpson Thacher & Bartlett LLP to assist in the Proposed Transaction.

**PARTIES**

9. Plaintiff is, and has been at all relevant times, the owner of Iberiabank common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant William H. Fenstermaker has served as a member of the Board since 1990 and is currently the Chairman of the Board.

11. Individual Defendant E. Stewart Shea III has served as a member of the Board since 1990.

12. Individual Defendant Harry V. Barton, Jr. has served as a member of the Board since 1993.

13. Individual Defendant Ernest P. Breaux, Jr. has served as a member of the Board since 1999.

14. Individual Defendant Daryl G. Byrd has served as a member of the Board since 1999 and is currently the Company's President and Chief Executive Officer.

15. Individual Defendant John N. Casbon has served as a member of the Board since 2001.

16. Individual Defendant J. Michael Kemp, Sr. has served as a member of the Board since May 2019.

17. Individual Defendant John E. Koerner III has served as a member of the Board since 2012.

18. Individual Defendant Rick E. Maples has served as a member of the Board since 2016.

19. Individual Defendant Rosa Sugranes has served as a member of the Board since 2018.

20. Defendant Iberiabank is incorporated in Louisiana and maintains its principal offices at 200 West Congress Street, Lafayette, Louisiana 70501. The Company's common stock trades on the NASDAQ Stock Exchange under the symbol "IBKC."

21. The defendants identified in paragraphs 10-19 are collectively referred to as the "Individual Defendants" or the "Board."

22. The defendants identified in paragraphs 10-20 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.   The Proposed Transaction**

23. Iberiabank, through its subsidiaries, provides commercial and retail banking products and services in the United States. It offers various commercial, consumer, mortgage, and private banking products and services; cash management services; deposit and annuity products; and brokerage services, as well as sells variable annuities. The company also provides various title insurance and loan closing services; equity research, institutional sales and trading, and corporate finance services; and wealth management and trust advisory services to high net worth individuals, pension funds, corporations, and trusts, as well as invests in purchased tax credits. As of December 31, 2018, it operated 191 bank branch offices and 3 loan production offices in Louisiana, Arkansas, Tennessee, Alabama, Texas, Florida, Georgia, South Carolina, North Carolina, Mississippi, Missouri, and New York; 29 title insurance offices in Arkansas, Tennessee, and Louisiana; mortgage representative offices in 87 locations in 12 states; and 18

5

wealth management locations in 5 states. Iberiabank was founded in 1887 and is headquartered in Lafayette, Louisiana.

24. On June 24, 2019, the Company and First Horizon jointly announced the Proposed Transaction:

> MEMPHIS, Tenn. & LAFAYETTE, La., Nov. 4, 2019 /PRNewswire/ -- First Horizon National Corp. ("First Horizon") (NYSE: FHN) and IBERIABANK Corporation ("IBERIABANK") (NASDAQ: IBKC) today announced that they have entered into a definitive agreement under which the companies will combine in an all-stock merger of equals.
>
> Under the terms of the agreement, which was unanimously approved by the Boards of Directors of both companies, the combined holding company and bank will operate under the First Horizon name and will be headquartered in Memphis, Tenn. Once the transaction is completed, the combined company will be one of the largest financial services companies headquartered in the South and one of the top 25 banks in the U.S. in deposits.
>
> The combined organization will have $75 billion in assets, $57 billion in deposits and $55 billion in loans. The merger combines two complementary franchises that are uniquely positioned to capitalize on market opportunities and increase their client base through greater scale, strategic investments in advanced technologies and expanded product offerings.
>
> Under the terms of the merger agreement, IBERIABANK shareholders will receive 4.584 shares of First Horizon for each IBERIABANK share they own. First Horizon shareholders will own 56% and IBERIABANK shareholders will own 44% of the combined company. Additionally, IBERIABANK shareholders will receive a 43% increase in their dividend after consummation of the transaction, based upon each company's current dividend per share.
>
> \* \* \*
>
> **Strategic Benefits**
> - Enhanced Scale to Drive Growth – The combined company will be a significant player throughout the Southern market, with $75 billion in assets. This combination enhances the combined company's ability to invest in advanced

technologies and innovation to strengthen its business and create a competitive advantage in a dynamic market environment.
- Complementary Market Presence – The combination strengthens the competitive position in highgrowth, demographically attractive Southern markets. The pro forma bank branch footprint is located in 15 of the Top 20 Southern MSAs by population and in 11 states throughout the combined footprint.
- Diversified Business Mix – The combined company will have a well-diversified revenue mix with earnings streams from unique lending capabilities and distinct fee income businesses across a broader customer base. The combined organization will offer a broader and more comprehensive suite of products and services for commercial, consumer and small business clients.
- Experienced Combined Management Team with Strong Cultural Alignment – In addition to a strong track record of successfully executing and integrating multiple large transactions, the combined management team has significant experience in leading regional banks. Together, First Horizon and IBERIABANK are committed to preserving the strong cultures of both companies to deliver superior client service.

**Financial Benefits**
- Significant EPS and Earnings Accretion – The transaction is projected to deliver approximately 16% EPS accretion to First Horizon and approximately 22% EPS accretion to IBERIABANK by year-end 2021.
- Substantial Cost Synergies – The transaction is expected to deliver approximately $170 million in pretax cost synergies, primarily driven by annual run-rate cost savings such as redundancies in overhead, bank branches, operations and computer services.
- Peer Leading Profitability – The combined company will be well-positioned to achieve peer leading profitability and operating metrics.
- Industry Leading Operating Metrics – The franchise is expected to deliver top-tier operating and return metrics with cost savings on a fully-phased in basis, including:
    - Return on Average Tangible Common Equity of approximately 18%
    - Return on Average Assets of approximately 1.4%, and
    - Efficiency Ratio of approximately 51%. New

7

**Company Governance and Leadership Team**
The combined company will be headquartered in Memphis, Tenn., and will maintain a significant operating presence in all of the markets in which both companies operate today. The combined company's regional banking headquarters will be located in New Orleans, La.

The combined company will be led by a balanced board and executive leadership team composed of members from both First Horizon and IBERIABANK. Upon closing of the transaction, the Board of Directors will consist of nine directors from First Horizon and eight directors from IBERIABANK. The new company will be led by Daryl G. Byrd as Executive Chairman of the Board of Directors and D.Bryan Jordan as Chief Executive Officer.

Leadership from First Horizon will be:
- William C. Losch, III, Chief Financial Officer
- David Popwell, President, Specialty Banking
- Susan Springfield, Chief Credit Officer
- Tammy LoCascio, Chief Human Resources Officer

Leadership from IBERIABANK will be:
- Anthony Restel, Chief Operating Officer
- Michael Brown, President, Regional Banking
- Terry Akins, Chief Risk Officer
- Beth Ardoin, Chief Communications Officer

Both companies' longstanding commitments to serve their communities will remain central to the combined organization's future. Collectively, the two companies have committed $10 billion to community benefit plans to increase access to financial resources and support for low and moderate income communities in the South. The combined bank will continue its investments in these and other important initiatives in the communities in which it operates. Timing and Approvals The merger is expected to close in the second quarter of 2020, subject to satisfaction of customary closing conditions, including receipt of customary regulatory approvals and approval by the shareholders of each company.

* * *

25. The Board has unanimously agreed to Proposed Transaction. It is therefore imperative that Iberiabank's stockholders are provided with the material information that has

been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

B.      **The Materially Incomplete and Misleading Registration Statement**

26.     On December 30, 2019, Iberiabank and First Horizon jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction.  The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

27.     With respect to the financial projections disclosed in the Registration Statement, the Registration Statement fails to provide material information.

28.     For the *IBKC Standalone Projections* and the *First Horizon Standalone Projections*, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics such as (1) Net Income to Common and (2) ROATCE, (3) Fee income ratio; (4) Efficiency ratio; (5) NIM; (6) Tangible common equity; and (7) CET1; among others; but fails to provide: (i) the line items used to calculate the non-GAAP measures, or (ii) a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a). Information about First Horizon's prospective financial information is material since Iberiabank stockholders will own 56% of the combined company.

29. Moreover, the Registration Statement sets forth that in connection with rendering their fairness opinions, the financial advisors reviewed and analyzed financial and operating information with respect to the business, operations and prospects of the pro forma combined company, including financial projections of the pro forma combined entity ("Pro Forma Projections"). Yet, the Registration Statement wholly omits the Pro Forma Projections relied upon by the financial advisors in their financial analyses.

30. When a company discloses non-GAAP financial measures in a Registration Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

31. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

32. Thus, to cure the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures. At the very least, the Company must disclose the line item forecasts for the financial metrics that were used to calculate the aforementioned non-GAAP measures. Such forecasts are necessary to make the non-GAAP forecasts included in the Registration Statement not misleading.

33. With respect to KBW's *IBKC and First Horizon Selected Companies Analysis*, the Registration Statement fails to disclose: (i) the individual multiples and financial metrics for each of the selected comparable companies observed by KBW in the analysis; and (ii) any benchmarking analyses for Iberiabank and First Horizon in relation to the selected companies analyzed by KBW.

34. With respect to KBW's *IBKC Discounted Cash Flow Analysis*, the Registration Statement fails to disclose (i) ranges of terminal value of Iberiabank at the end of the 4.5-year period from the second quarter of 2020 through 2024 and the inputs and assumptions underlying the use of the multiple range of 9.5x to 11.5 IBKC's estimated 2025 earnings; (ii) the inputs and assumptions underlying the discount rates ranging from 9.0% to 11.0%; (iii) the basis for assuming that IBKC would maintain a common equity tier 1 ratio of 10.00% and that IBKC would retain sufficient earnings to maintain that level.

35. With respect to KBW's *First Horizon Discounted Cash Flow Analysis*, the Registration Statement fails to disclose (i) the present value of the estimated excess cash flows that First Horizon could generate over the 4.5-year period from the second quarter of 2020 through 2024 and the present value of First Horizon's implied terminal value at the end of such

period; and the inputs and assumptions underlying the use of the multiple range of 9.5x to 11.5 First Horizon's estimated 2025 earnings; (ii) the inputs and assumptions underlying the discount rates ranging from 8.5% to 10.5%; (iii) the basis for assuming that First Horizon would maintain a common equity tier 1 ratio of 10.00% and that First Horizon would retain sufficient earnings to maintain that level.

36. With respect to KBW's *Pro Forma Combined Discounted Cash Flow Analysis*, the Registration Statement fails to disclose (i) the present value of the estimated excess cash flows that First Horizon could generate over the 4.5-year period from the second quarter of 2020 through 2024 and the present value of First Horizon's implied terminal value at the end of such period and assumptions underlying the use of the multiple range of 9.5x to 11.5 pro forma estimated 2025 earnings; (ii) the inputs and assumptions underlying the discount rates ranging from 8.75% to 10.75%; (iii) the basis for assuming that pro forma entity would maintain a common equity tier 1 ratio of 10.00% and that pro forma entity would retain sufficient earnings to maintain that level; and (iv) pro form combined entity's estimated 2025 earnings.

37. With respect to Goldman Sachs' *Illustrative Present Value of Future Stock Price Analysis for IBKC*, the Registration Statement fails to disclose (i) the specific inputs and assumptions underlying the discount rate of 8.0%; (ii) the basis for applying illustrative price to EPS multiples of 10.4 and 11.4x to the estimates of the EPS of Iberiabank on a stand-alone basis for 2020, 2021 and 2022, respectively.

38. With respect to Goldman Sachs' *Regression Analysis for IBKC*, the Registration Statement fails to disclose the multiples observed for the selected companies calculated by Goldman Sachs.

39. With respect to Goldman Sachs' *Illustrative Discounted Dividend Analyses for IBKC on a Stand-Alone Basis*, the Registration Statement fails to disclose (i) the specific inputs and assumptions underlying the range of discount rates from 7.0% to 9.0%; (ii) the range of illustrative terminal values for the Company as of December 31, 2024; (iii) the implied distributions to Company stockholders over the period beginning September 30, 2019 through December 31, 2024; and (iv) the total number of fully diluted shares of Company common stock outstanding.

40. With respect to Goldman Sachs' *Illustrative Present Value of Future Stock Price Analysis for First Horizon on a Stand-Alone Basis*, the Registration Statement fails to disclose (i) the specific inputs and assumptions underlying the discount rate of 7.5%; (ii) the basis for applying illustrative price to EPS multiples of 9.7x and 10.7x to the estimates of the EPS of First Horizon on a stand-alone basis for 2020, 2021 and 2022, respectively.

41. With respect to Goldman Sachs' *Regression Analysis for First Horizon on a Stand-Alone Basis*, the Registration Statement fails to disclose the multiples observed for the selected companies calculated by Goldman Sachs.

42. With respect to Goldman Sachs' *Illustrative Discounted Dividend Analyses for First Horizon on a Stand-Alone Basis*, the Registration Statement fails to disclose (i) the specific inputs and assumptions underlying the range of discount rates from 6.5% to 8.5%; (ii) the range of illustrative terminal values for the Company as of December 31, 2024; (iii) the implied distributions to First Horizon stockholders over the period beginning September 30, 2019 through December 31, 2024; and (iv) the total number of fully diluted shares of First Horizon common stock outstanding.

43. With respect to Goldman Sachs' *Illustrative Present Value of Future Stock Price Analysis for IBKC Shares on a Pro Forma Basis*, the Registration Statement fails to disclose (i) the specific inputs and assumptions underlying the discount rate of 7.75%; (ii) the basis for applying illustrative price to EPS multiples of 10.0x and 11.0x to the estimates of the EPS of First Horizon on a pro forma basis for 2020, 2021 and 2022, respectively.

44. With respect to Goldman Sachs' *Regression Analysis for IBKC Shares on a Pro Forma Basis*, the Registration Statement fails to disclose the multiples observed for the selected companies calculated by Goldman Sachs.

45. With respect to Goldman Sachs' *Illustrative Discounted Dividend Analyses for IBKC Shares on a Pro Forma Basis*, the Registration Statement fails to disclose (i) the specific inputs and assumptions underlying the range of discount rates from 6.75% to 8.75%; (ii) the range of illustrative terminal values for the First Horizon on a pro forma basis as of December 31, 2024; (iii) the implied distributions to First Horizon stockholders over the period beginning September 30, 2019 through December 31, 2024; and (iv) the synergies expected to be generated by the Proposed Transaction.

46. In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

47.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

48.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

49.     Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

50.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and

disclose such information to stockholders although they could have done so without extraordinary effort.

51. Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

52. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

53. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

54. The Individual Defendants acted as controlling persons of Iberiabank within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Iberiabank, and participation in and/or awareness of the Company's operations

and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Iberiabank, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

55. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

56. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Iberiabank, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Registration Statement.

57. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

58. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

59. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

60. Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.    Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: January 6, 2020

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

By: */s/ Gloria Kui Melwani*
Gloria Kui Melwani (GM5661)
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114
Email: melwani@whafh.com

*Attorneys for Plaintiff*